PTO Form 1478 (Rev 9/2006)
OMB No. 0651-0009 (Exp 12/31/2011)

# Trademark/Service Mark Application, Principal Register

*NOTE: Data fields with the \* are mandatory. The wording "(if applicable)" appears where the field is only mandatory under the facts of the particular application.*

## The table below presents the data as entered.

| Input Field | Entered |
|---|---|
| **SERIAL NUMBER** | N/A |
| **MARK INFORMATION** | |
| **\*MARK** | mark.jpg |
| **STANDARD CHARACTERS** | YES |
| **USPTO-GENERATED IMAGE** | YES |
| **LITERAL ELEMENT** | ZUMA |
| **MARK STATEMENT** | The mark consists of standard characters, without claim to any particular font, style, size, or color. |
| **APPLICANT INFORMATION** | |
| **\*OWNER OF MARK** | Swallow Trading Co., Ltd. dba Swallow Ski Company |
| **\*STREET** | 771 Iiyama-shi |
| **\*CITY** | Nagano-ken |
| **\*COUNTRY** | Japan |
| **\*ZIP/POSTAL CODE** (Required for U.S. applicants only) | 389-22 |
| **LEGAL ENTITY INFORMATION** | |
| **TYPE** | corporation |
| **STATE/COUNTRY OF INCORPORATION** | Japan |
| **GOODS AND/OR SERVICES AND BASIS INFORMATION** | |
| **INTERNATIONAL CLASS** | |
| **\*IDENTIFICATION** | skis, snowboards, ski and snowboard bindings, ski and snowboard boots, and ski and snowboard related accessories |
| **FILING BASIS** | SECTION 1(a) |
|     **FIRST USE ANYWHERE DATE** | At least as early as 08/31/1996 |
|     **FIRST USE IN COMMERCE DATE** | At least as early as 08/31/1996 |

Exhibit 1 - Page 1 of 7

| SPECIMEN<br>FILE NAME(S) | spec-675166114-182605898 . 20110513 Specimen 1 -<br>_Skis.pdf |
|---|---|
| | spec-675166114-182605898 . 20110513 Specimen 2 -<br>_snowboards.pdf |
| SPECIMEN DESCRIPTION | picture of the mark shown on the goods |
| **ATTORNEY INFORMATION** | |
| NAME | David P. Cooper |
| ATTORNEY DOCKET NUMBER | SLW402 |
| FIRM NAME | Kolisch Hartwell, P.C. |
| STREET | 520 S.W. Yamhill Street, Suite 200 |
| CITY | Portland |
| STATE | Oregon |
| COUNTRY | United States |
| ZIP/POSTAL CODE | 97204 |
| PHONE | (503) 224-6655 |
| FAX | (503) 295-6679 |
| EMAIL ADDRESS | docketing@khpatent.com |
| AUTHORIZED TO COMMUNICATE VIA EMAIL | Yes |
| OTHER APPOINTED ATTORNEY | John M. McCormack; Edward B. Anderson; Pierre C. Van Rysselberghe; Charles H. DeVoe; Owen W. Dukelow; James R. Abney; Peter D. Sabido; Carla Todenhagen; Thomas J. Romano; Shawn J. Kolitch; and David C. Bourgeau |
| **DOMESTIC REPRESENTATIVE INFORMATION** | |
| NAME | David P. Cooper |
| FIRM NAME | Kolisch Hartwell, P.C. |
| STREET | 520 S.W. Yamhill Street, Suite 200 |
| CITY | Portland |
| STATE | Oregon |
| COUNTRY | United States |
| ZIP CODE | 97204 |
| PHONE | (503) 224-6655 |
| FAX | (503) 295-6679 |

Exhibit 1 - Page 2 of 7

| EMAIL ADDRESS | docketing@khpatent.com |
|---|---|
| AUTHORIZED TO COMMUNICATE VIA EMAIL | Yes |
| **CORRESPONDENCE INFORMATION** | |
| NAME | David P. Cooper |
| FIRM NAME | Kolisch Hartwell, P.C. |
| STREET | 520 S.W. Yamhill Street, Suite 200 |
| CITY | Portland |
| STATE | Oregon |
| COUNTRY | United States |
| ZIP/POSTAL CODE | 97204 |
| PHONE | (503) 224-6655 |
| FAX | (503) 295-6679 |
| EMAIL ADDRESS | docketing@khpatent.com |
| AUTHORIZED TO COMMUNICATE VIA EMAIL | Yes |
| **FEE INFORMATION** | |
| NUMBER OF CLASSES | 1 |
| FEE PER CLASS | 325 |
| *TOTAL FEE DUE | 325 |
| *TOTAL FEE PAID | 325 |
| **SIGNATURE INFORMATION** | |
| SIGNATURE | /david p. cooper/ |
| SIGNATORY'S NAME | David P. Cooper |
| SIGNATORY'S POSITION | Attorney of Record, Oregon State Bar |
| DATE SIGNED | 05/13/2011 |

Exhibit 1 - Page 3 of 7

PTO ; orm 1478 (Rev 9/2006)
OMB No. 0651-0009 (Exp 12/31/2011)

**Mark (USPTO-generated image for standard characters):**



Back

PTO Form 1478 (Rev 9/2006)
OMB No. 0651-0009 (Exp 12/31/2011)

# Trademark/Service Mark Application, Principal Register

## Serial Number:  N/A

Class #

picture of the mark shown on the goods

**Specimen:**spec-675166114-182605898_._20110513_Specimen_1_-_Skis.pdf

  spec-675166114-182605898_._20110513_Specimen_1_-_Skis.pdf

**Specimen:**spec-675166114-182605898_._20110513_Specimen_2_-_snowboards.pdf

  spec-675166114-182605898_._20110513_Specimen_2_-_snowboards.pdf

Back



**ZUMA** 09/10 COLLECTIONS

### ZUMA SURF
Construction: woodcore sandwich twin-tip
ABS SIDEWALL construction
150, 160, 170 cm

### ZUMA WAVE
Construction: super RIM core twin-tip CAP construction
150, 160, 170 cm

### ZUMA PARK
Construction: woodcore sandwich twin-tip
ABS SIDEWALL construction
125, 135, 145, 155 cm

### ZUMA BEACH
Construction: woodcore sandwich twin-tip
ABS SIDEWALL construction
120, 130 cm





SKIS



10

Exhibit 1 - Page 6 of 7



## ZUMA BEACH HD
**Construction: woodcore sandwich directional TCC construction**
**136, 141, 147, 153, 158, 163 cm**

(Black)

(White)

SNOWBOARD

Exhibit 1 - Page 7 of 7

16

## TRADEMARK LICENSE AND DISTRIBUTION AGREEMENT

This Trademark License and Distribution Agreement (this "TLDA") is entered into as of May 17, 2011, by and between Swallow Trading Co., Ltd., a Japanese Corporation ("**Licensor-Vendor**") and Steven T. Wolf, an individual residing in Wayland, MA ("**Licensee-Distributor**").

WHEREAS, **Licensor-Vendor** is and has been engaged for many years in the business of manufacturing skis, snowboards and related sporting equipment ("the Products") and licensing others to distribute its branded Products, and owns several trademarks for those products, including the mark ZUMA for snowboards;

WHEREAS, **Licensee-Distributor** is and has been for many years in the business of marketing, distributing and selling various products to customers through his distribution channels ("Channel"); and

WHEREAS, **Licensor-Vendor** and **Licensee-Distributor** wish to memorialize their past oral agreement of 1996 pursuant to which **Licensor-Vendor** licensed **Licensee-Distributor** to distribute branded Products within the Territory.

NOW, THEREFORE, in consideration of the mutual promises set forth herein, and other valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1.   DEFINITIONS

    1.1   "**Documentation**" shall mean paper or electronic copy.

    1.2   "**Effective Date**" shall mean August 1, 1996.

    1.3   "**Product**" or "**Products**" shall mean skis, ski bindings, snowboards, snowboard bindings, ski and snowboard boots, ski and snowboard clothing and related sporting equipment.

    1.4   "**Channel**" shall mean **Licensee-Distributor's** retail and wholesale customers.

    1.5   "**Distribution**" or "**Distribute**" or "**Distributed**"shall mean the physical shipment of of Products to customers.

    1.6   "**Territory**" shall mean all countries except China, Korea and Japan.

    1.7   "License" shall mean the license from **Licensor-Vendor** to **Licensee-Distributor** based upon **Licensor-Vendor's** Intellectual Property Rights.

    1.8   "**Licensor-Vendor's** Intellectual Property Rights" shall mean all legal rights, including copyright, trademark, service mark, trade dress, and trade secret rights, available to **Licensor-Vendor** that provide protection/exclusionary rights with respect to **Licensor-Vendor's** technology which is present in the Products. **Licensor-Vendor's** trademarks include **SWALLOW** and **ZUMA**.

2.   APPOINTMENT/LICENSE

1

Exhibit 2 - Page 1 of 8

2.1     <u>License Rights Granted to **Licensee-Distributor**</u>.

(a)     **Licensor-Vendor** hereby grants to **Licensee-Distributor** a non-transferable, non-exclusive License under **Licensor-Vendor's** Intellectual Property Rights to Distribute the Product through his Channel during the Term (as hereinafter defined) within the Territory in accordance with the terms and conditions set forth herein. This License shall include the right to use **Licensor-Vendor's** trademark/service marks on the Product. **Licensor-Vendor** shall control the nature and quality of all goods distributed by **Licensee-Distributor** pursuant to the License. **Licensee-Distributor** is granted no other license rights other than those expressly granted in the License. Any sale of a Product shall include the same copyright, trademark and other proprietary rights notices contained on the masters of such Product (including the Documentation) provided to **Licensee-Distributor** by **Licensor-Vendor,** or as may be specified from time to time by **Licensor-Vendor.**

(b)     **LICENSEE-DISTRIBUTOR** UNDERSTANDS AND AGREES THAT THIS AGREEMENT GRANTS ONLY THE RIGHTS DEFINED IN 2.1 (a) IMMEDIATELY ABOVE, AND THAT UNDER NO CIRCUMSTANCES WILL **LICENSEE-DISTRIBUTOR** DELIVER, TRANSFER OR SELL PRODUCTS OTHER THAN THOSE DEFINED IN 1.3 ABOVE WITHOUT THE PRIOR WRITTEN CONSENT OF **LICENSOR-VENDOR**, WHICH CONSENT LICENSOR-VENDOR MAY WITHHOLD IN ITS SOLE AND ABSOLUTE DISCRETION. SUCH AN ACT ON THE PART OF **LICENSEE-DISTRIBUTOR** WOULD CONSTITUTE A MATERIAL BREACH OF THIS AGREEMENT.

2.2     <u>Expenses</u>. **Licensee-Distributor** will bear all costs and expenses of marketing and distributing the Products.

2.3     <u>Approval of Literature and Markings</u>. **Licensee-Distributor** will submit for **Licensor-Vendor's** advance written approval (which shall be subject to **Licensor-Vendor's** sole discretion) all marketing literature and proprietary markings which **Licensee-Distributor** desires to use for the Products, and will not use marketing literature and proprietary markings lacking such approval.

3.     <u>LICENSE FEES</u>

**Licensee-Distributor** shall pay **Licensor-Vendor** the License fee(s) that **Licensor-Vendor** charges in supplying, for example, snowboards to **Licensee-Distributor**. For instances where **Licensee-Distributor** used **Licensor-Vendor's** trademarks or other Intellectual Property on Products that are not manufactured and supplied by **Licensor-Vendor**, **Licensor-Vendor** shall determine what fee, if any, **Licensee-Distributor** will be required to pay to **Licensor-Vendor** under this TLDA.

2

Exhibit 2 - Page 2 of 8

4.    UNDERTAKINGS OF THE PARTIES

4.1    Marketing of the Products.    **Licensee-Distributor** shall use his best efforts to promote the Distribution of the Products in the Territory through the Channel and to develop a market demand for the same in the Territory.  The rights granted to **Licensee-Distributor** under this Agreement are non-exclusive in the Territory.

4.2    Conduct of Business.    **Licensee-Distributor** will conduct its business in a manner that will reflect favorably at all times on the Products and the good name, goodwill and reputation of **Licensor-Vendor**; avoid deceptive, misleading or unethical practices or advertisements that are or might be detrimental to **Licensor-Vendor**, the Products, or the public; and not publish or employ or cooperate in the publication or employment of any misleading or deceptive advertising materials.

4.3    Compliance with Laws.    **Licensee-Distributor** will comply with the laws and regulations of all applicable local, state and federal jurisdictions, including, but not limited to, all state and federal laws and regulations governing product warranties.

4.4    Sales Materials.    **Licensor-Vendor** agrees to provide **Licensee-Distributor**, upon prior notice, with such sales materials with respect to Products as **Licensor-Vendor** generally makes available to its other Licensees-Distributors and/or sales representatives, including technical specifications, prices, drawings, and advertisements, and **Licensee-Distributor** may reproduce such materials as reasonably required, provided that all copyright, trademark and other property markings are reproduced.  Such materials remain the property of **Licensor-Vendor**, and, except insofar as they are distributed by **Licensee-Distributor** in the course of its performance of its duties under this Agreement, must be promptly returned to **Licensor-Vendor** upon the expiration or termination of this Agreement without charge to **Licensor-Vendor.**

5.    CONFIDENTIALITY OF INFORMATION AND MATERIALS

**Licensee-Distributor** shall hold in strict confidence and shall not disclose to others or use, either before or after termination or expiration of this Agreement, any technical or business information, manufacturing technique, process, experimental work, trade secret or other confidential matter relating to the Products.  **Licensee-Distributor** shall, upon request (and upon termination or expiration of this Agreement without request), deliver to **Licensor-Vendor** any and all drawings, notes, documents and materials received from **Licensor-Vendor,** without charge to **Licensor-Vendor**.

Likewise, **Licensor-Vendor** shall hold in strict confidence and shall not disclose to others or use, either before or after termination or expiration of this Agreement, any technical or business information, manufacturing technique, process, experimental work, trade secret or other confidential matter relating to the business of **Licensee-Distributor**.  **Licensor-Vendor** shall, upon request (and upon termination or expiration of this Agreement without request), deliver to

3

Exhibit 2 - Page 3 of 8

**Licensee-Distributor** any and all drawings, notes, documents and materials received from **Licensee-Distributor**, without charge to **Licensee-Distributor**.

6.    REPRESENTATIONS AND WARRANTIES

   6.1    Licensor-Vendor.    **Licensor-Vendor** represents and warrants that **Licensor-Vendor** has the full power and authority to enter into this Agreement.    **Licensor-Vendor disclaims any warranty with respect to the functionality of any of the Products.**

   6.2    Licensee-Distributor.    **Licensee-Distributor** represents and warrants that **Licensee-Distributor** has full power and authority to enter into this Agreement.

7.    INDEMNIFICATION

   7.1    Licensor-Vendor.

   (a)    **Licensor-Vendor** shall indemnify, defend, and hold Licensee-Distributor harmless from and against all claims, suits, demands, actions and proceedings, judgments, penalties, damages, costs and expenses (including reasonable legal fees and costs), losses or liabilities ("**Damages**") arising out of a claim that a Product constitutes an infringement of any registered copyright or trademark held by a third party, and **Licensor-Vendor** will pay the Damages finally awarded in any suit or proceeding.

   (b)    **Licensor-Vendor** shall not be obligated to defend or be liable for Damages under this paragraph 7.1 if the alleged infringement arises out of or is in any manner attributable to any modification of any Product by **Licensee-Distributor**.

   (c)    If any intellectual property claim which **Licensor-Vendor** is obligated to defend has occurred, or in **Licensor-Vendor's** opinion is likely to occur, **Licensee-Distributor** agrees to permit **Licensor-Vendor**, at the **Licensor-Vendor's** option and expense, either to procure for **Licensee-Distributor** the right to continue using the subject Product or to replace or modify such Product so that it becomes non-infringing.

   7.2    Licensee-Distributor.    **Licensee-Distributor** shall indemnify and hold **Licensor-Vendor** harmless from and against all Damages which may arise or result (a) from the Distribution by **Licensee-Distributor** of the Product, or (b) from any Damages incurred by **Licensor-Vendor** resulting from a breach by **Licensee-Distributor** of any provision of this Agreement.

   7.3    Claims.    With respect to any claims falling within the scope of the foregoing indemnifications:  (a) each party agrees to notify the other promptly of and keep the other fully advised with respect to such claims and the progress of any suits in which the other party is not participating;  (b) the indemnifying party shall have the right to assume, at its expense, the defense of a claim or suit made or filed against the indemnified party; and (c) if the indemnifying party does not represent the indemnified party in any claim or suit, the

4

Exhibit 2 - Page 4 of 8

indemnifying party shall pay the indemnified party's legal costs and expenses in defense of such claim unless such claim is attributed to any modification of any Product by **Licensee-Distributor** without prior consent of **Licensor-Vendor**. **Licensee-Distributor** shall not settle any claim or suit without the prior written approval of **Licensor-Vendor**, which approval will not be unreasonably withheld or delayed.

7.4    NEITHER PARTY SHALL BE LIABLE TO THE OTHER PARTY FOR LOST PROFITS, LOSS OF DATA OR ANY COLLATERAL, INCIDENTAL, SPECIAL OR CONSEQUENTIAL DAMAGES OF ANY KIND.

8.    TERM OF AGREEMENT

8.1 This Agreement commenced on the Effective Date and shall end on December 31, 2012, unless earlier determined in accordance herewith (the "**Term**").

8.2 This Agreement may be renewed for successive two (2) year periods upon written agreement of the parties executed at least thirty (30) days prior to the end of the then-existing period. Any such additional periods shall be considered as included in the definition of "Term".

9.    TERMINATION

9.1    Termination For Cause. Either party may terminate this Agreement, upon written notice, for cause as follows:

(a)    Bankruptcy. Either party may immediately terminate this Agreement upon written notice to the other party in the event that proceedings in bankruptcy or insolvency are instituted by or against the other party, or a receiver is appointed, or if any substantial part of the assets of the other party is the object of attachment, sequestration or other type of comparable proceeding, and such proceeding is not vacated or terminated within sixty (60) days after its commencement or institution.

(b)    Material Breach. Either party may terminate this Agreement if the other party commits a material breach of any of the terms or provisions of this Agreement and does not cure such breach within thirty (30) days after receipt of written notice given by the first party.

9.2    Rights Upon Termination. Upon termination of this Agreement, by expiration of the Term or otherwise, all further rights and obligations of the parties shall cease, except that the parties shall not be relieved of (i) their respective obligations to pay any moneys due or which become due as of or subsequent to the date of termination, and (ii) any other respective obligations under this Agreement which specifically survive or are to be performed after the date of termination. Except as otherwise expressly provided in this Agreement, no consideration or indemnity shall be payable to the Licensee-Distributor either for loss of profit, goodwill, creation of clientele or other like or unlike items, nor

5

Exhibit 2 - Page 5 of 8

for advertising costs, costs of samples or supplies, termination of employees, employees' salaries and other like or unlike items.

9.3     Survival of Terms.  Sections 3-7 of this Agreement shall survive any termination of this Agreement.

10.     BOOKKEEPING OBLIGATIONS AND INSPECTION RIGHTS

**Licensee-Distributor** shall maintain true and complete records of Product shipments and sales, and books of account, and **Licensor-Vendor** shall have the right, by a certified public accountant appointed by it, to examine such books at all reasonable times (but not more than twice in each calendar year) for the purpose of verifying the accuracy of the reports rendered by **Licensee-Distributor**. Upon reasonable advance notice, such examination shall be made during normal business hours at the principal place of business of **Licensee-Distributor**. If such examination reveals that reports furnished by **Licensee-Distributor** were inaccurate by more than five percent (5%) and that amounts in excess of those paid to **Licensor-Vendor** are due, the cost of such examination shall be borne by **Licensee-Distributor** and **Licensee-Distributor** shall pay the amount of any discrepancy to **Licensor-Vendor**, plus interest at the rate of eighteen percent (18%) per year on any deficiencies.

11.     MISCELLANEOUS

11.1     Entire Agreement.  This Agreement contains the entire understanding of the parties hereto relating to the Products, supersedes any prior written or oral agreement or understandings between the parties with respect to the Products, and cannot be changed or terminated orally.  Only a writing signed by the parties hereto may amend this Agreement.

11.2     Enforceability.  The invalidity or unenforceability of any provision of this Agreement will not affect the validity or enforceability of any other provision of this Agreement.

11.3     Assignment.  Neither this Agreement nor the rights or obligations hereunder may be assigned by **Licensee-Distributor** without the prior written consent of **Licensor-Vendor**, which consent may be withheld in **Licensor-Vendor's** sole discretion.  Licensor-Vendor may assign this Agreement and its rights and obligations thereunder.

11.4     Successors.  All rights and obligations arising out of this Agreement shall inure the benefit of, and be binding on and enforceable by the parties and their respective successors and permitted assigns.

11.5     Currency.  All dollar amounts herein are expressed in United States funds.

11.6     Governing Law/Consent to Personal Jurisdiction and Venue.  This Agreement and its validity, construction and performance shall be governed in all respects by the internal

6

Exhibit 2 - Page 6 of 8

laws of the State of Oregon. In any dispute arising from this Agreement or Licensor-Vendor's Intellectual Property Rights, Licensee-Distributor consents to the jursidiction and venue of all state and federal courts of Oregon.

11.7    Notices. All notices or other communications required or permitted to be given pursuant to this Agreement shall be in writing and shall be considered as properly given or made if hand delivered, mailed first class mail, postage prepaid, sent by prepaid telegram (or telex or other facsimile transmission) or sent by express overnight courier service:

If to **Licensor-Vendor** to:

Mr. Satoshi Maruyama, President
Swallow Ski Co., Ltd.
2-13-5, Kuramae, Taito-ku
Tokyo 111-0051
Japan

If to **Licensee-Distributor**, to:

9 Blossom Lane
Wayland, MA  01778

or to such other address as any such party may have designated by like notice forwarded to the other party hereto.

11.8    Independent Contractors. The parties hereto are independent contractors and neither party is an employee, agent, partner or joint venturer of the other. Neither party shall have the right to bind the other party, whether directly or indirectly, to any agreement with a third party or to incur any obligation or liability on behalf of such other party, whether directly or indirectly.

7

Exhibit 2 - Page 7 of 8

IN WITNESS WHEREOF the parties hereto have caused this Agreement to be signed under seal as of the date first set forth above.

**Licensor-Vendor**
Swallow Trading Co. Ltd.

Dated _5/23/11_

Name: Satoshi Murayama
Title    President

**Licensee-Distributor**
Steven T Wolf

Dated: _5/20/11_

Name: Steven T. Wolf

Exhibit 2 - Page 8 of 8



Snowjam

Zuma

Spice

Maxx

SNOWJAM 2004 2005 PRODUCT CATALOG

Exhibit 3 - Page 1 of 12



Exhibit 3 - Page 2 of 12



Exhibit 3 - Page 3 of 12



THE ZUMA LINE ENCOMPASSES THE ENTIRE SNOWBOARD RIDING SPECTRUM. FROM THE ZUMA ROBOT FOR A FIRST TIME FREESTYLE PERFORMER, UP TO OUR PRO MODEL, ZUMA SNOWBOARDS SATISFY THOSE LOOKING FOR THE PERFECT RIDE.







OUR PRO MODEL IS SUPER RESPONSIVE AND HIGH PERFORMING  HIT THE PARK OR THE PIPE WITH MONSTER EDGE-TO-EDGE QUICKNESS FOR TOTAL FREESTYLE DOMINATION. YOU WON'T BELIEVE THE ENERGY GENERATED FROM THIS BOARD WHILE STILL ENGINEERED TO TAKE THE PUNISHMENT.

SIZES: **141, 147, 153, 158, 163**

* TWIN CONSTRUCTION™
* FULL WOOD CORE
* HIGH MOLECULAR WEIGHT SINTERED BASE
* 360° FULL WRAP STEEL EDGE
* GRAPHICS BY CAMERON TIEDE

Exhibit 3 - Page 4 of 12









OUR MOST FEATURE-RICH BOARD, THE SURF OFFERS
THE ADVANTAGES OF SIDEWALL CONSTRUCTION
FOR TURNING AND CAPPED TIP AND TAIL FOR MORE
CONTROL AT HIGH SPEEDS.

SIZES: 141, 147, 153, 158, 163

* TWIN CONCEPT CONSTRUCTION™
* ABS SIDEWALL
* FULL WOOD CORE
* HIGH MOLECULAR WEIGHT SINTERED BASE
* 360° FULL WRAP STEEL EDGE









FUN AND DURABLE, THE BEACH IS FOR THE
INTERMEDIATE OR HIGHER RIDER YEARNING FOR
RESPONSIVE EDGE-TO-EDGE CONTROL AND
STABILITY ON ALL TERRAINS.

SIZES: 138, 144, 150, 156, 162

* DURABLE, FREESTYLE CONSTRUCTION
* ABS SIDEWALL CONSTRUCTION
* BIAXIAL GLASS WITH REVERSE PRINTED
  TOP SHEET
* FULL WOOD CORE
* EXTRUDED P-TEX BASE
* 360° FULL WRAP STEEL EDGE

3

Exhibit 3 - Page 5 of 12



Exhibit 3 - Page 6 of 12



Exhibit 3 - Page 7 of 12



Exhibit 3 - Page 8 of 12

09

**COSMIC SURF**



**CMS SHERBET**
Construction: super RIM core
CAP construction
144, 152 cm





**CMS HULAPANI**
Construction: super RIM core twin-tip
CAP construction
140, 150 cm

**ZUMA**



**ZUMA SURF**
Construction: woodcore sandwich twin-tip
ABS SIDEWALL construction
150, 160, 170 cm

**ZUMA WAVE**
Construction: super RIM core twin-tip
150, 160, 170 cm



**ZUMA PARK**
Construction: woodcore sandwich twin-tip CAP construction
ABS SIDEWALL construction
125, 135, 145, 155 cm





**ZUMA BEACH**
Construction: woodcore sandwich twin-tip
ABS SIDEWALL constr.
120, 130 cm

Exhibit 3 - Page 9 of 12



SNOWBOARD

(White)

(Black)

**ZUMA BEACH HD**
Construction: woodcore sandwich
directional TOC construction
136, 141, 147, 153, 158, 163 cm

**ZUMA SURF LT**
Construction: woodcore sandwich
twin-tip SIDEWALL construction
139, 143, 147, 151, 155, 159 cm

**ZUMA SURF HT**
Construction: woodcore sandwich twin-tip
TOC construction
147, 152, 157 cm

ZUMA

Exhibit 3 - Page 10 of 12



SWALLOW
SNOWBOARDS
Hienryu
ZUMA
COSMIC SURF
2010/2011
COLLECTIONS

Exhibit 3 - Page 11 of 12



Exhibit 3 - Page 12 of 12



Exhibit 4 - Page 1 of 1

**Snowboard** (mm)

| Model Name | Length (cm) | Effective Edge | Running Length | Tip Width | Waist Width | Tail Width | Sidecut Radius(m) | Stance Width |
|---|---|---|---|---|---|---|---|---|
| **飛燕龍 Hienryu (WLD-3)** | | | | | | | | 2x4(20Hole) |
| | 147 | 1150 | 1100 | 277 | 236 | 277 | 7.6 | 420–500 |
| | 152 | 1200 | 1130 | 264 | 242 | 284 | 8.1 | 460–540 |
| | 157 | 1250 | 1190 | 289 | 245 | 289 | 8.3 | 480–540 |
| **ZUMA CHRIS RUNGE MODEL (WHB-4)** | | | | | | | | 4x4(16Hole) |
| | 141 | 1062 | 1010 | 278 | 240 | 278 | 7.3 | 360–520 |
| | 147 | 1122 | 1070 | 283 | 243 | 283 | 7.6 | 400–560 |
| | 153 | 1182 | 1100 | 286 | 249 | 286 | 8.9 | 440–600 |
| | 158 | 1232 | 1130 | 294 | 252 | 294 | 9.0 | 440–600 |
| | 163 | 1282 | 1190 | 300 | 255 | 300 | 9.1 | 470–630 |
| **ZUMA SURF (WLD-3)** | | | | | | | | 4x4(12Hole) |
| | 138 | 1032 | 950 | 276 | 236 | 274 | 7.5 | 360–520 |
| | 144 | 1082 | 1010 | 280 | 242 | 278 | 7.8 | 380–520 |
| | 150 | 1182 | 1070 | 296 | 245 | 294 | 8.4 | 400–580 |
| | 156 | 1212 | 1130 | 291 | 248 | 290 | 8.8 | 440–600 |
| | 162 | 1272 | 1180 | 292 | 252 | 291 | 10.2 | 450–610 |

**Snowboard** (mm)

| Model Name | Length (cm) | Effective Edge | Running Length | Tip Width | Waist Width | Tail Width | Sidecut Radius(m) | Stance Width |
|---|---|---|---|---|---|---|---|---|
| **ZUMA WAVE-2 (WCD-2 WCD-4)** | | | | | | | | 4x4(16Hole) |
| | 138 | 1032 | 950 | 275 | 238 | 274 | 7.5 | 360–520 |
| | 144 | 1092 | 1010 | 280 | 242 | 279 | 7.8 | 380–520 |
| | 150 | 1152 | 1070 | 285 | 245 | 284 | 8.4 | 400–580 |
| | 153 | 1182 | 1100 | 288 | 249 | 288 | 8.9 | 440–600 |
| | 158 | 1232 | 1130 | 294 | 252 | 294 | 9.0 | 440–600 |
| | 163 | 1282 | 1190 | 300 | 255 | 300 | 9.1 | 470–630 |
| **ZUMA WAVE ver1 (PD-2)** | | | | | | | | 4x4(16Hole) |
| | 138 | 1032 | 950 | 270 | 229 | 269 | 6.5 | 360–520 |
| | 144 | 1092 | 1010 | 275 | 252 | 274 | 7.0 | 380–520 |
| | 150 | 1152 | 1070 | 280 | 235 | 279 | 7.4 | 400–590 |
| | 156 | 1212 | 1130 | 285 | 238 | 284 | 7.9 | 440–600 |
| | 162 | 1272 | 1180 | 291 | 242 | 290 | 8.3 | 450–610 |
| **ZUMA WAVE-Jr. (PT-Jr.)** | | | | | | | | 4x4(12Hole) |
| | 108 | 870 | 824 | 225 | 200 | 225 | 7.2 | 270–350 |
| | 118 | 955 | 918 | 225 | 200 | 225 | 8.4 | 320–400 |
| | 128 | 1035 | 1004 | 244 | 215 | 244 | 9.0 | 320–400 |



LOGIN | 2011 GOOD WOOD | RI

**VIDEOS    PHOTOS    GEAR GUIDE    RESORTS    BLOG    HOW TO    CALENDAR**

## Snowjam Sponsors Chris Runge

By
Wed, Feb 18 2004 1:20 pm | 158 views | 0 Comments

| Like | 0 | SHARE: |

Snowjam becomes a major sponsor of pro Chris Runge

WAYLAND, MA — Snowjam, Inc., a leader in the snowboard industry, announced today that the company will be a major sponsor of pro snowboarder Chris Runge. Runge will exclusively use Snowjam snowboards, boots and bindings during competitions, making him the first professional to be sponsored by Snowjam. As part of the agreement, Snowjam will launch a collection of Pro Signature Model products designed by Chris.

Runge, 23, is currently the reigning 2003 USASA National Champion. Chris also qualified 1st in the 2003 Ripzone Invitational and finished 8th. His upcoming competition schedule includes the 2004 Vans Triple Crown of Snowboarding and the 2004 Winter X Games.

"We are proud and excited to support Chris and have him represent Snowjam," said Steve Wolf, President of Snowjam. "Chris was sought after to be our first team rider because of his tremendous skills and vision for the sport. He is a true competitor, performer and sportsman and we are thrilled to be teamed up with him."

The sponsorship of Chris is the first step of many by Snowjam to improve its visibility in the world of snowboarding. Snowjam has been a fierce competitor and market leader with the technology and design that goes into their products. Gaining additional visibility through the X Games will give Snowjam the brand exposure necessary to further compete in the competitive snowboard market.

"I am excited to be riding for Snowjam, a great company with a long history of producing quality snowboarding products," said Chris. "I am looking forward to working with Snowjam in designing and developing a collection of pro model products, and I have no doubt we will do plenty of exciting things in the upcoming years."

Exhibit 5 - Page 1 of 3



**About Snowjam:**

Snowjam has been a leading manufacturer of snowboard products for 10 years and is comprised of the Snowjam, Zuma and Spice (women's) brands. Based in Wayland, MA, Snowjam provides cutting edge gear all expertly designed and developed to maximize functionality and great looks. For more information on Snowjam, please visit www.snowjam.com or call 508-358-4550.

**About Imani Sports:**

Chris Runge is represented by Imani Sports, a Minneapolis-based sport management company specializing in athlete representation, event management and corporate sport marketing. Imani Sports was founded by Chris Murray and Rick Born in 1998. Contact James Sullivan at jamess@imanisports.com for questions or comments regarding Chris.

| Like | 0 | | **SHARE:** |

CATEGORIZED: Other

O COMMENTS  |  VIEW ALL COMMENTS  |  POST A NEW COMMENT

**CONNECT**
Contact us
Facebook
Twitter
You Tube
RSS Feed
Report Site Issues

**ABOUT TWSNOW**
Contact us
Customer Service
Careers
Media Kit
Privacy Policy

**THE MAGAZINE**
Subscribe
Renew Subscription
Give a Gift Subscription
International Orders

**RETAIL PARTNERS**
Featured Retailers
evo.com
The House
USoutdoor.com
zumiez.com
TW Snow Shop

**FEATURED**
2011 Good
Riders Poll
TransAM
TransAM
Team Shoo

Jeremy Jones

Travis Rice

Torstein Horgmo

Mark McMorris

**TRANSW    RLD**                

Copyright © 2011 Transworld Snowboarding. All rights reserved.



# The Commonwealth of Massachusetts
## William Francis Galvin

Secretary of the Commonwealth, Corporations Division
One Ashburton Place, 17th floor
Boston, MA 02108-1512
Telephone: (617) 727-9640

## SNOWJAM, INC. Summary Screen

Help with this form

Request a Certificate

**The exact name of the Domestic Profit Corporation:** SNOWJAM, INC.

**The name was changed from:** DR. GLOVE INC. **on** 4/30/1996

**Entity Type:** Domestic Profit Corporation

**Identification Number:** 043102417

**Old Federal Employer Identification Number (Old FEIN):** 000344442

**Date of Organization in Massachusetts:** 09/28/1990

**Date of Voluntary Dissolution:** 12/02/2008

**Current Fiscal Month / Day:** 12 / 31        **Previous Fiscal Month / Day:** 00 / 00

**The location of its principal office:**
No. and Street:        9 BLOSSOM LANE
City or Town:        WAYLAND        State: MA        Zip: 01778        Country: USA

**If the business entity is organized wholly to do business outside Massachusetts, the location of that office:**
No. and Street:
City or Town:        State:        Zip:        Country:

**Name and address of the Registered Agent:**
Name:        STEVEN WOLF
No. and Street:        9 BLOSSOM LANE
City or Town:        WAYLAND        State: MA        Zip: 01778        Country: USA

**The officers and all of the directors of the corporation:**

| Title | Individual Name First, Middle, Last, Suffix | Address (no PO Box) Address, City or Town, State, Zip Code | Expiration of Term |
|---|---|---|---|
| PRESIDENT | STEVEN WOLF | 9 BLOSSOM LANE, WAYLAND, MA 01778 USA 9 BLOSSOM LANE, WAYLAND, MA 01778 USA | |
| TREASURER | STEVEN WOLF | 9 BLOSSOM LANE, WAYLAND, MA 01778 USA 9 BLOSSOM LANE, WAYLAND, MA 01778 USA | |

Exhibit 6 - Page 1 of 2

| SECRETARY | STEVEN WOLF | 9 BLOSSOM LANE,<br>WAYLAND, MA 01778 USA<br>9 BLOSSOM LANE,<br>WAYLAND, MA 01778 USA | |

**business entity stock is publicly traded:** __

**The total number of shares and par value, if any, of each class of stock which the business entity is authorized to issue:**

| Class of Stock | Par Value Per Share<br>Enter **0** if no Par | Total Authorized by Articles<br>of Organization or Amendments<br>*Num of Shares*    *Total Par Value* | Total Issued<br>and Outstanding<br>*Num of Shares* |
|---|---|---|---|
| No Stock Information available online. Prior to August 27, 2001, records can be obtained on microfilm. | | | |

| | | | |
|---|---|---|---|
| __ Consent | __ Manufacturer | __ Confidential Data | __ Does Not Require Annual Report |
| __ Partnership | __ Resident Agent | __ For Profit | __ Merger Allowed |

**Select a type of filing from below to view this business entity filings:**

ALL FILINGS
Administrative Dissolution
Annual Report
Application For Revival
Articles of Amendment

[ View Filings ]    [ New Search ]

**Comments**

© 2001 - 2011 Commonwealth of Massachusetts
All Rights Reserved

?
Help

Exhibit 6 - Page 2 of 2



# The Commonwealth of Massachusetts
# William Francis Galvin

Secretary of the Commonwealth, Corporations Division
One Ashburton Place, 17th floor
Boston, MA 02108-1512
Telephone: (617) 727-9640

## SNOWJAM LLC Summary Screen

❓ Help with this form

[ Request a Certificate ]

**The exact name of the Domestic Limited Liability Company (LLC):** SNOWJAM LLC

**The name was changed from:** SNOWJAM, LLC on 3/27/2009

**Entity Type:** Domestic Limited Liability Company (LLC)

**Identification Number:** 000978934

**Date of Organization in Massachusetts:** 05/29/2008

**The location of its principal office:**
No. and Street: 5 TIMBERLINE ROAD
City or Town: MILLIS    State: MA    Zip: 02054    Country: USA

**If the business entity is organized wholly to do business outside Massachusetts, the location of that office:**
No. and Street:
City or Town:    State:    Zip:    Country:

**The name and address of the Resident Agent:**
Name: RUBEN COMETTANT
No. and Street: 5 TIMBERLINE ROAD
City or Town: MILLIS    State: MA    Zip: 02054    Country: USA

**The name and business address of each manager:**

| Title | Individual Name<br>First, Middle, Last, Suffix | Address (no PO Box)<br>Address, City or Town, State, Zip Code |
|---|---|---|
| MANAGER | JACOPO EMMANUELI | 342 ROUTE 139<br>ABERCOM, QUEBEC, FF J0E 2K0 CAN |

**The name and business address of the person in addition to the manager, who is authorized to execute documents to be filed with the Corporations Division.**

| Title | Individual Name<br>First, Middle, Last, Suffix | Address (no PO Box)<br>Address, City or Town, State, Zip Code |
|---|---|---|
| SOC SIGNATORY | JACOPO EMANUELI | 342 ROUTE 139<br>ABEROCM, QUE, FF J0E 2K0 CAN |
| SOC SIGNATORY | ROBERT HUNG | YUNG PING RD., TAIPING CITY TAICHUNG HSIEN<br>TAIWAN, REP OF CHINA, FF 00000 CHN |

Exhibit 7 - Page 1 of 2

**The name and business address of the person(s) authorized to execute, acknowledge, deliver and record any recordable instrument purporting to affect an interest in real property**

| Title | Individual Name<br>First, Middle, Last, Suffix | Address (no PO Box)<br>Address, City or Town, State, Zip Code |
|---|---|---|
| REAL PROPERTY | JACOPO EMANUELI | 342, RT 139<br>ABERCOM, QUE, FF J0E 2K0 CAN |
| REAL PROPERTY | ROBERT HUNG | YUNG PING RD., TAIPING CITY TAICHUNG HSIEN<br>TAIWAN, REP OF CHINA, FF 00000 CHN |

___ Consent     ___ Manufacturer     ___ Confidential Data     ___ Does Not Require Annual Report

___ Partnership     ___ Resident Agent     ___ For Profit     ___ Merger Allowed

**Select a type of filing from below to view this business entity filings:**

ALL FILINGS
Annual Report
Annual Report - Professional
Articles of Entity Conversion
Certificate of Amendment

[ View Filings ]     [ New Search ]

**Comments**

© 2001 - 2011 Commonwealth of Massachusetts
All Rights Reserved

Help

Exhibit 7 - Page 2 of 2

PTO Form 1478 (Rev 9/2006)
OMB No. 0651-0009 (Exp 12/31/2011)

# Trademark/Service Mark Application, Principal Register

## TEAS Plus Application

**Serial Number: 85274076**
**Filing Date: 03/23/2011**

*NOTE: Data fields with the * are mandatory under TEAS Plus. The wording "(if applicable)" appears where the field is only mandatory under the facts of the particular application.*

## The table below presents the data as entered.

| Input Field | Entered |
|---|---|
| **TEAS Plus** | YES |
| **MARK INFORMATION** | |
| *MARK | ZUMA |
| *STANDARD CHARACTERS | YES |
| USPTO-GENERATED IMAGE | YES |
| LITERAL ELEMENT | ZUMA |
| *MARK STATEMENT | The mark consists of standard characters, without claim to any particular font, style, size, or color. |
| **REGISTER** | Principal |
| **APPLICANT INFORMATION** | |
| *OWNER OF MARK | Snowjam LLC |
| DBA/AKA/TA/FORMERLY | TA Zuma Snowboards |
| *STREET | 5 Timberline Road |
| *CITY | Millis |
| *STATE (Required for U.S. applicants) | Massachusetts |
| *COUNTRY | United States |
| *ZIP/POSTAL CODE (Required for U.S. | 02054 |

Exhibit 8 - Page 1 of 10

| | |
|---|---|
| applicants only) | |
| **PHONE** | 5083765247 |
| **FAX** | 5083765242 |
| **EMAIL ADDRESS** | jle@snowjam.com |
| **AUTHORIZED TO COMMUNICATE VIA EMAIL** | Yes |
| **WEBSITE ADDRESS** | www.snowjam.com |
| **LEGAL ENTITY INFORMATION** | |
| **\*TYPE** | LIMITED LIABILITY COMPANY |
| **\* STATE/COUNTRY WHERE LEGALLY ORGANIZED** | Massachusetts |
| **GOODS AND/OR SERVICES AND BASIS INFORMATION** | |
| **\* INTERNATIONAL CLASS** | 025 |
| **IDENTIFICATION** | Snowboard boots |
| **\*FILING BASIS** | SECTION 1(a) |
| **FIRST USE ANYWHERE DATE** | At least as early as 05/29/2008 |
| **FIRST USE IN COMMERCE DATE** | At least as early as 05/29/2008 |
| **SPECIMEN FILE NAME(S)** | |
| **ORIGINAL PDF FILE** | spec-1-216228216130-001730272_._Zuma_Logo.pdf |
| **CONVERTED PDF FILE(S) (1 page)** | \\TICRS\EXPORT11\IMAGEOUT11\852\740\85274076\xml1\FTK0003.JPG |
| **SPECIMEN DESCRIPTION** | ZUMA |
| **\* INTERNATIONAL CLASS** | 028 |
| **IDENTIFICATION** | Snowboards |
| **\*FILING BASIS** | SECTION 1(a) |
| **FIRST USE ANYWHERE DATE** | At least as early as 05/29/2008 |
| **FIRST USE IN COMMERCE DATE** | At least as early as 05/29/2008 |
| **SPECIMEN FILE NAME(S)** | |

Exhibit 8 - Page 2 of 10

| ORIGINAL PDF FILE | spec-216228216130-001730272 . Zuma_Logo.pdf |
|---|---|
| CONVERTED PDF FILE(S) (1 page) | \\TICRS\EXPORT11\IMAGEOUT11\852\740\85274076\xml1\FTK0004.JPG |
| SPECIMEN DESCRIPTION | ZUMA |

## ADDITIONAL STATEMENTS INFORMATION

| *TRANSLATION (if applicable) | |
|---|---|
| *TRANSLITERATION (if applicable) | |
| *CLAIMED PRIOR REGISTRATION (if applicable) | |
| *CONSENT (NAME/LIKENESS) (if applicable) | |
| *CONCURRENT USE CLAIM (if applicable) | |

## CORRESPONDENCE INFORMATION

| *NAME | Snowjam LLC |
|---|---|
| FIRM NAME | Snowjam LLC |
| *STREET | 5 Timberline Road |
| *CITY | Millis |
| *STATE (Required for U.S. applicants) | Massachusetts |
| *COUNTRY | United States |
| *ZIP/POSTAL CODE | 02054 |
| PHONE | 5083765247 |
| FAX | 5083765242 |
| *EMAIL ADDRESS | jle@snowjam.com |
| *AUTHORIZED TO COMMUNICATE VIA EMAIL | Yes |

## FEE INFORMATION

| NUMBER OF CLASSES | 2 |
|---|---|
| FEE PER CLASS | 275 |

Exhibit 8 - Page 3 of 10

| *TOTAL FEE PAID | 550 |
| --- | --- |
| **SIGNATURE INFORMATION** | |
| * SIGNATURE | /jacopo emanueli/ |
| * SIGNATORY'S NAME | Jacopo Emanueli |
| * SIGNATORY'S POSITION | General Manager |
| * DATE SIGNED | 03/23/2011 |

Exhibit 8 - Page 4 of 10

PTO Form 1478 (Rev 9/2006)
OMB No 0651-0009 (Exp 12/31/2011)

## Trademark/Service Mark Application, Principal Register

## TEAS Plus Application

### Serial Number: 85274076
### Filing Date: 03/23/2011

## To the Commissioner for Trademarks:

**MARK:** ZUMA (Standard Characters, see mark)
The literal element of the mark consists of ZUMA.
The mark consists of standard characters, without claim to any particular font, style, size, or color.

The applicant, Snowjam LLC, TA Zuma Snowboards, a limited liability company legally organized under the laws of Massachusetts, having an address of

    5 Timberline Road
    Millis, Massachusetts 02054
    United States

requests registration of the trademark/service mark identified above in the United States Patent and Trademark Office on the Principal Register established by the Act of July 5, 1946 (15 U.S.C. Section 1051 et seq.), as amended, for the following:

**For specific filing basis information for each item, you must view the display within the Input Table.**
    International Class 025:  Snowboard boots


In International Class 025, the mark was first used at least as early as 05/29/2008, and first used in commerce at least as early as 05/29/2008, and is now in use in such commerce. The applicant is submitting one specimen(s) showing the mark as used in commerce on or in connection with any item in the class of listed goods and/or services, consisting of a(n) ZUMA.

**Original PDF file:**
spec-1-216228216130-001730272_._Zuma_Logo.pdf
**Converted PDF file(s)** (1 page)
Specimen File1

**For specific filing basis information for each item, you must view the display within the Input Table.**
    International Class 028:  Snowboards


In International Class 028, the mark was first used at least as early as 05/29/2008, and first used in commerce at least as early as 05/29/2008, and is now in use in such commerce. The applicant is submitting one specimen(s) showing the mark as used in commerce on or in connection with any item in

Exhibit 8 - Page 5 of 10

the class of listed goods and/or services, consisting of a(n) ZUMA.

**Original PDF file:**
spec-216228216130-001730272_._Zuma_Logo.pdf
**Converted PDF file(s)** (1 page)
Specimen File1


For informational purposes only, applicant's website address is: www.snowjam.com
The applicant's current Correspondence Information:

    Snowjam LLC

    Snowjam LLC

    5 Timberline Road

    Millis, Massachusetts 02054

    5083765247(phone)

    5083765242(fax)

    jle@snowjam.com (authorized)


A fee payment in the amount of $550 has been submitted with the application, representing payment for 2 class(es).

### Declaration

The undersigned, being hereby warned that willful false statements and the like so made are punishable by fine or imprisonment, or both, under 18 U.S.C. Section 1001, and that such willful false statements, and the like, may jeopardize the validity of the application or any resulting registration, declares that he/she is properly authorized to execute this application on behalf of the applicant; he/she believes the applicant to be the owner of the trademark/service mark sought to be registered, or, if the application is being filed under 15 U.S.C. Section 1051(b), he/she believes applicant to be entitled to use such mark in commerce; to the best of his/her knowledge and belief no other person, firm, corporation, or association has the right to use the mark in commerce, either in the identical form thereof or in such near resemblance thereto as to be likely, when used on or in connection with the goods/services of such other person, to cause confusion, or to cause mistake, or to deceive; and that all statements made of his/her own knowledge are true; and that all statements made on information and belief are believed to be true.


Signature: /jacopo emanueli/   Date Signed: 03/23/2011
Signatory's Name: Jacopo Emanueli
Signatory's Position: General Manager


RAM Sale Number: 6596
RAM Accounting Date: 03/23/2011

Serial Number: 85274076
Internet Transmission Date: Wed Mar 23 01:12:04 EDT 2011
TEAS Stamp: USPTO/FTK-216.228.216.130-20110323011204

Exhibit 8 - Page 6 of 10

325311-85274076-480b642bf4860a74e9ac4c0a
5bab1ff8557-CC-6596-20110323001730272135

Exhibit 8 - Page 7 of 10

# ZUMA

Exhibit 8 - Page 8 of 10



Exhibit 8 - Page 9 of 10



Exhibit 8 - Page 10 of 10